May it please the court, David Rose appearing on behalf of the appellant Devon Shelley in this case. Mr. Shelley was subjected to age discrimination when he was denied a promotion to the Kansas City Chief of Contracting position in the Corps of Engineers. Am I right that about 130 people applied for the position? Well, there's two, this is a two track hiring process. I understand the temporary and then the permanent. Now tell me, just in numbers, how many applied for each position? I believe there was six for the 120 day temporary and I believe that there were 33 resumes submitted for the permanent. Where did I get that higher number in my head? I don't know. You don't think it appears. The district court granted the Corps summary judgment at holding that Gross v. FBL Financial changed the legal landscape in ADEA cases involving circumstantial evidence. And that the McDonnell Douglas evidentiary framework that has been applied in the Ninth Circuit on these cases no longer is applicable. The Ninth Circuit has not decided this issue. But a majority of courts have held that while Gross now requires an ADA plaintiff to demonstrate that discrimination was the but-for cause of the adverse employment action, the McDonnell Douglas framework is instructive at summary judgment stage. And we were at summary judgment. If it is, what's your prima facie case? He's a protected class member, yes. He had an adverse action, yes. A younger person was chosen instead of him. What else do you need and how do you get it? That's correct. He was at the time of the application for the promotion, Mr. Shelley was 54, the selectee was 41. He was denied the promotion. He was qualified for the promotion in comparison to the selectee. And the selectee was substantially younger. The problem is that he didn't even make the final six. He not only didn't get selected for the position, he didn't even get selected for an interview. And among those final six were people who were older than he was. That's correct. So where's the problem? The problem is, and that's why it's important to focus on the 120-day selection, because the 120-day played an integral part in the ultimate action, and that is denying him the interview. Because had he been selected for the 120-day, for which he was qualified, and the decision-maker in that process knew of his eligibility for retirement, or at least there was evidence in the record of that, and recommended the younger selectee with absolutely no foundation for making such a recommendation. And that raises an inference that his motivation was based upon age, because he had no basis to, as his top pick, to recommend the younger candidate. Well, the younger candidate was at level 14 already, and your client was at level 13, so why wouldn't that be a basis? Well, and that's an important factor, because what the selection personnel was required to do was to pick the most qualified applicant for the Kansas City Chief of Contracting position, and that position entailed full range of contracting functions that a contracting officer would perform, pre-award, post-award, in civil, military, environmental, the whole range of works. The selectee had no experience in those areas of the Kansas City Chief's position, whereas Mr. Shelley had ample experience in the resume. And also that the GS-14 wouldn't be a factor because Mr. Scanlon, the person who had the age-related information, did not review Mr. Marsh's resume when he made the recommendation that he be appointed to the Chief of Contracting position. Wasn't Mr. Marsh already in the Kansas City area? No, he was in Huntsville, Alabama. Oh, he was. Okay. And he applied, as did Mr. Shelley, for the 120-day. And as we've referred to in the record, that the selecting official, Colonel Butler, had said in the EEO testimony that she would have selected Shelley, but for a bad reference from the Chief of Contracting in Walla Walla. Well, that was a material issue of fact because Ms. Oberle testified that she made no such bad recommendation, and therefore something is going on there. There was inconsistencies in the record that raises inference that age was a factor. Should we just lay out the qualifications of the person selected in Shelley's qualifications, or should we be looking at the other people who were selected for interview and were turned down? Are they just completely immaterial to this? Well, I think the way I start with the 120-day is that the age discrimination carries from the decision to select Marsh for the temporary to the decision to determine who's going to be interviewed, the final six. And the same age bias that crept into the 120-day decision permeated that decision on whom to interview. What were the ages of the other candidates for the 120-day position? Well, Mr. Marsh was 41. Your client was 54? Yes. And the others? Wouldn't that be important to know? No, I don't think so because the You just told us that age discrimination was a factor in the 120-day thing. Wouldn't it be useful to know who else was in the array? We know that in the final array, they chose six people for an interview, and among those six people were people of equal and older age than your client. Right, but the person making the decision was familiar with my client, his credentials, his age, his eligibility for retirement. From the 120-day. Right. He had no information or knowledge of the other candidates because he wasn't given any resumes. He had no basis to make any determination on age as to those other candidates. So that's specifically directed toward my client with whom he worked in the same region with my client. I don't want to use up all your rebuttal time, but part of the problem with your client's qualifications is that he didn't put them on his resume. Is there any explanation for that? Well, they are on the resume, but in contracting officer terminology, there's a lot of language that's terms of art and that if you know contracting, like partnering, administration, contracting officers, decisions, claims, all that, that is actual contracting work as opposed to evaluating regulations and reviewing policy. That's all in his resume. And also, bronze star for military service in Afghanistan. That's military contracting overseas in Afghanistan. I mean, that's all in the resume. Now, could it have been spelled out a little bit more, perhaps? Yes. Is there anything in the record that tells us what the reader would have understood that perhaps the layperson doesn't understand in reading that resume? In other words, you're saying that if Mary Baker, whatever her name was, read the resume, she would know, oh, that's code for this and that's code for that, and we judges don't know that. Is there something in the record that would explain that to us, why the resume is more meaningful than it looks to the casual observer? Well, yes. Mr. Scanlon, who was the regional chief of contracting, certainly would understand the differences in the experience from reviewing the resume. And so that's why this summary judgment was improper, because a searching inquiry is required in these employment cases so that these qualifications can be evaluated to see if there is such a stark disparity of credentials that raises an inference of discrimination. I think I'm out of time. You are. We've taken much of your time. I will allow you one minute for rebuttal. Let's hear from Mr. Guerin's counsel, Mr. Edwards. Please support. William Edwards for the Army of the United States. At the outset, Your Honors, what Judge Whalen did in this case is he jumped straight to the question at issue. And the question is, was Mr. Shelley denied an interview, not the job, but the interview? That's how the issue was framed from the outset with the complaint. That's how it was framed in the federal complaint. That's how it was framed by Judge Whaley. Was he denied an interview because of his age? Are you saying the claim about not getting the 120-day temporary appointment was not raised below? I am saying that, Your Honor. The claim about not getting the 120-day developmental assignment, and this is both in our brief and to the lower court, was not brought to the EEO office within 45 days. Did it have to be? It did not have to be. That was one of the alternate ways in which Shelley could have raised it. So he didn't take Path 1. He didn't raise it within 45 days of learning that he was not selected for a 120-day developmental assignment. And then the statute allows an alternate route where he can notify the EEOC within 180 days of the alleged discriminatory event. So, in this case, the decision not to hire him for the 120-day developmental assignment would have taken place in November of 2005. There is no evidence in the record that Mr. Shelley ever gave the EEOC notice of his intent to sue over the 120-day developmental assignment, and he did not, in fact, sue until July 28th of 2008. So a full two years later after it was already too late to bring the 120-day developmental assignment to bear before the court. So, yes, it is the United States' position that the 120-day developmental assignment is not part of this case as a matter of law. Was it mentioned in the EEO claim? It was not mentioned as part of the formal complaint. It was not mentioned as one of the issues accepted for the investigation. There was some testimony in the administrative proceeding about the 120-day developmental assignment, but, Your Honor, I would point you to the case of Morgan cited in the Supreme Court case. I'm sorry I'm reaching for the citation. But the essence of the Morgan case, Your Honor, is that if the plaintiff wants to bring an action regarding a – this was cited in the summary judgment motion. I don't think it's actually in the brief. But the Supreme Court said that if the complainant wants to bring an action  job action, that person can never seek a waiver for the strict time limits. And in this case, the 120-day developmental assignment, the United States' position is this is a discrete job action. He needs to satisfy the time requirements on the 120-day developmental assignment itself. It's not enough that during the process in a subsequent EEO complaint, which was filed outside of the time limits to bring the 120-day developmental assignment, that that gets mentioned in the testimony. That will not satisfy his burden. If we were to for the moment set aside whether his claim is timely or not, is there an issue as to why he was denied an interview? The woman said, I never said such a thing. And the interviewer said that was why they denied the interview. Well, first of all, I don't completely agree with the characterization of the testimony. The testimony from Connie Oberle was that she did not remember making that reference. The testimony from Butler, from Major Butler, was that she not only remembered the reference, but she gave some specific details about what the reference involved. And also should be noted that Connie Oberle was the complainant's supervisor, and she was also applying for the permanent position herself, and that Shelley, of course, would be a competitor of hers at the time that she was making the reference. And a messy. Yes, sir, and a very messy. Very messy. Yes. So there is a little bit of a difference of opinion. The appellant has argued, in listening to him, was trying to string this together. He's arguing that the decision-maker in the 120-day developmental assignment was the same as one of the panel members in the permanent position. I don't agree that the record reflects that. The record reflects that Colonel Butler made the decision. She did consult with Mr. Scanlon. But in terms of actually who reviewed the resumes and who made the decision, who made the recommendation, the testimony is that Colonel Butler made that. And then apparently she checked with Mr. Scanlon to see if he had any objection, and he seemed to like that. But his testimony was not that he didn't know anything about Mr. Marsh. On the contrary, when you go to the page that the complainant cites to, he says he knew Marsh by reputation. Perhaps he should have known more about Marsh before he made that recommendation, but that's really not evidence of age discrimination. That's just a complaint about the thoroughness of the process. We don't agree that there's any evidence that Mr. Scanlon had any discriminatory animus towards the appellant. The only evidence that's been offered by the appellant, and Judge Whaley addressed both of these, one is that Mr. Scanlon may have been more involved than he remembered in the 120-day developmental assignment decision. But there's just no evidence that that leads to an inference of discrimination or that age was involved. Well, there's his inquiry as to the retirement ages of at least one of the candidates. The only evidence presented to support that, Your Honor, was from Ms. Oberle. She said at roughly the same time that this election decision was made, there was an inquiry about when people would retire, and then the evidence that was produced to support that was this unsigned document with no signature on it, with no specific names on it, that indicated when some specific disciplines and positions would need to be backfilled because of retirements. The document itself was dated after the decision was made to hire Mr. Marsh. Why is this really relevant? Well, we would argue it's not relevant. There's case law in this circuit and in other circuits saying that a mere inquiry into somebody's age or retirement eligibility is not evidence of discrimination. I mean, there's a perfectly legitimate business reason to ask who's going to retire for purposes of planning staffing down the road. It's not evidence that somebody is trying to lock somebody out of a job opportunity because of their age. Do we know the ages of the six applicants for the 120-day position? No, Your Honor. It's not reflected in the record. It is reflected in the record for the interviewees, as you correctly pointed out. Assuming that McDonnell-Douglas still applies to tell us what is required for a prima facie case, I know you dispute that, but if it does, what under Ninth Circuit McDonnell-Douglas law is required to make out a prima facie case of age discrimination? Being in the protected class, having an adverse action, and having someone substantially younger than you selected and you are qualified for the job, is there something more required than those things? Yes, Your Honor. Under the Thompson case that we cited in our brief on summary judgment and also in the Schultz case versus Burlington Northern Railroad, both those cases say that when you're dealing with multiple selectees, and in this case because we're dealing with who got offered an interview, the selectees at this stage where the people got offered an interview, when you're dealing with multiple selectees, you cannot make your prima facie case under Ninth Circuit law or under the Eighth Circuit case that the appellant cited with approval if there are other people who did get advanced who are either older or who are roughly the same age as the person who's complaining. And under the Schultz case, which is an Eighth Circuit case, but still I don't think the Ninth Circuit has a different position on this, the difference need only be five years. So if we use that standard, there were actually three applicants who got interviews who under Schultz were not significantly younger than the appellant in the interview stage to justify an adverse discrimination. Let's look then at either the 120-day or the ultimate selection. What would be required beyond what I said for a prima facie case? And what I'm getting at, does the selectee have to be equally qualified? Do they have to be better qualified? Do they have to be clearly better qualified? Well, just addressing the question of how qualified he needs to be, he does need to establish that he is at least as qualified as the selectee. At least as, but not clearly more than. My reading of the case law, Your Honor, and I apologize I can't cite a specific case to this, is that it's enough for a complainant to make his burden under the prima facie case, setting aside these other issues I've raised, if he can establish equal qualifications and then he can move on to attack the pretext. And I would point out, Your Honor, in this case, there are three, when you look at the criteria, there were three criteria that specifically mentioned what kind of experience does the, you gave an outstanding example, and what the outstanding candidate would have branch chief experience supervising multiple people. There are three of them, teamwork, leadership, and managerial experience. In all three of those cases, the complainant totally failed to indicate how his last five years, his last two jobs met those requirements. Whereas the selectee, Mr. Marsh, exceeded those because not only did he supervise these people, he wasn't a branch chief. He was a division chief. He had even more responsibility than what the outstanding version would be. In fact, really to make this case work, the complainant needs Marsh's resume and he needs the person he got selected to have his resume. Because as District Court Judge Whaley pointed out, Marsh's qualifications are starkly superior. I'm sorry, that's a little bit, that's probably overstating what Judge Whaley said. But he did point to the higher grade, the fact that it was a lateral, and he said that it was not evident to him that Shelley, as Shelley has contended, has starkly superior qualifications. If there are no other questions, I would. Okay. Thank you, Your Honor. Thank you, Mr. Edwards. Mr. Rose, I've given you a minute. Thank you, Your Honor. The District Court clearly had jurisdiction over the 120-day allegation because it's like or reasonably related to the other charge. And, in fact, in this case, it's so tightly related. The same decision maker was involved, and it's a failure to promote to the same job within weeks of each other. So they're so tightly related that it clearly fell within the District Court's jurisdiction under case law. Also, the issue of qualifications in Ninth Circuit, and we cited the RAD case, R-A-A-D case, that superior qualifications give rise to an inference of discrimination and pretext. And that should have been sufficient to deny summary judgment in this case. How are your clients' qualifications superior? Well, there was various components. Was Mr. Marsh a division chief or a division head? That's what I heard Mr. Edwards say. Well, he was in Huntsville, which was a totally different operation than the Kansas City District. The Kansas City Division is over the entire Northwest region. But the 120-day outlined the requirements, the qualifications required for the chief of contracting position. Shelly had experience in all of those areas, and Marsh had little to no experience in those areas. That's the key part. What about leadership and training? Those were supposed to be part of the qualifications. That's correct. And Shelly, on all counts, was starkly superior. They talk about the education. He had a master's. Marsh did not have a master's degree. And as far as leadership, I spoke earlier about the military, the Brown Star, the service overseas and construction. And so those are genuine issues of material fact that should preclude summary judgment in this case. Okay. Thank you. Thank you. I thank both counsel for the argument. The case is submitted.
judges: Wilken, Fletcher B. , Bybee